I.
In the early morning hours of Sunday, December 28, 1980, well before dawn, a man broke into and entered the trailer home of Mrs. J.B. Ross near the Sunflower River in Coahoma County, Mississippi. The next day Percy Lee Sanders, defendant below and appellant here, was arrested and formally charged with this crime.
On July 8, 1981, Sanders was charged with the armed burglary of an inhabited dwelling at nightime in an indictment returned by the Coahoma County Grand Jury. Miss. Code Ann. § 97-17-23 (1972). On July 30, 1981, this case was called for trial in the Circuit Court of Coahoma County. After hearing all the evidence and receiving the instructions of the court and the arguments of counsel, the jury in due course found Sanders guilty as charged. As a recidivist, Sanders was sentenced to serve a term of 25 years without eligibility for probation or parole.
From this conviction and sentence, Sanders appeals. We reverse. *Page 246 
 II.
By far the most serious question presented on this appeal is whether or not prosecution of Sanders on the instant burglary charge was precluded under the double jeopardy clause of the Fifth Amendment to the Constitution of the United States, made applicable to the states via the Fourteenth Amendment. Sanders also invokes the protections of this state's double jeopardy clause found in Article 3, Section 22 of the Mississippi Constitution of 1890.
 A.
The facts pertinent to the double jeopardy issue are these. Upon his arrest on December 29, 1980, Sanders was charged with two felonies, burglary and rape. On January 7, 1981, the Coahoma County Grand Jury returned two indictments against Sanders. In case No. 6268, Sanders was indicted for the rape of Mrs. J.B. Ross during the early morning hours of December 28, 1980. In case No. 6269, Sanders was indicted for the burglary of an inhabited dwelling.[1] Without question, these two indictments, as well as the indictment which led to the instant conviction in case No. 6305, all arose generally out of the same series of events occurring in the mobile home of Mrs. J.B. Ross in the early morning hours of December 28, 1980.[2] There is an obvious common nucleus of operative facts among these charges.
On or about February 16, 1981, defendant was put to trial on the charge of rape as per the indictment in case No. 6268. Two days later, the jury returned a not guilty verdict. Sanders here argues that this acquittal on the charge of rape insulates him from prosecution on the factually and temporarily related charge of burglary.
 B.
Our inquiry here is whether Sanders emerged from the rape trial armed with a jury finding of fact in his favor with which the instant burglary conviction cannot logically coexist. Here we must review the issues submitted to the jury at the rape trial and ascertain what, if any, findings of fact in Sanders' favor rationally flow therefrom. For if the jury's verdict in the first trial necessarily was based upon a finding of fact which must per force exonerate Sanders here, he is entitled to relief. Ashe v.Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970);State v. Clements, 383 So.2d 818 (Miss. 1980).
At the rape trial, Sanders vigorously pressed only one theory of defense: that he was not the person who entered the mobile home in the first place, that the true villain of December 28, 1980, was one Willie Earl Scott, who admittedly had been in the vicinity at the time in question. We have carefully reviewed the evidence in the record at the first trial. It is clear beyond a reasonable doubt that on the morning in question someone broke into the Ross mobile home — a man wearing a cap over his face. It is clear beyond a reasonable doubt that this same someone assaulted and raped Mrs. J.B. Ross. Mrs. Ross could not identify this man.
In proceedings before the jury, the defense proceeded on a single theory: Willie Earl Scott did it. In his final argument to the jury defense counsel emphasized a single theory: Willie Earl Scott did it. "It" includes the entire series of events — breaking and entering the mobile home and the rape of Mrs. Ross. Under the circumstances a rational juror voting for acquittal at the rape trial could only have proceeded on the theory that Willie Earl Scott, not Percy Lee Sanders, broke into the mobile home on the night in question and raped Mrs. Ross.[3] *Page 247 
Stated more precisely, the jury verdict at the rape trial can only mean that the evidence failed to convince the jury beyond a reasonable doubt that Sanders did it. No other theory was ever advanced to the jury.
It is true that the jury at the rape trial was given a standard instruction on the elements of the offense of forcible rape. The jury, of course, was told that in order to convict it had to find beyond a reasonable doubt each element of the offense. The jury at the rape trial could have found that the State failed to prove that Mrs. Ross was a female person, but under the evidence it could not rationally have done so. At the rape trial the jury could have found that the State failed to prove penetration, but in view of the evidence and particularly the testimony of the expert witness, Dr. McCrory, it could not rationally have done so. The jury could have found a failure to prove force, and perhaps other elements of the offense, but it could notrationally have done so!
We emphasize from yet another vantage point Sanders' jeopardy on the breaking and entering, the elements of burglary, at the rape trial. At the rape trial the State offered substantial evidence to show that Sanders broke and entered into the Ross mobile home. Willie Earl Scott himself testified that he witnessed Sanders remove the window screen, break the window and enter the trailer, armed with a knife. Without doubt all of this was a part of the res gestae at the rape trial and admissible as such. Yet who can doubt that such evidence was offered to enhance the State's chances of obtaining a conviction. Practically speaking the evidence of the breaking and entering placed Sanders in substantial jeopardy. It was in a sense evidence of aggravating circumstances intended to prejudice Sanders before the jury. That Sanders successfully eluded this jeopardy by convincing the jury that he was not the man who did either form of breaking and entering does not erase the fact that Sanders had been placed in substantial jeopardy by virtue of the State's proof.
 C. (1)
The Fifth Amendment to the Constitution of the United States protects an accused against "double jeopardy".
 ". . . [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . . ."
This protection against double jeopardy is enforceable against the states through the Fourteenth Amendment. Benton v.Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969);Ashe v. Swenson, 397 U.S. 436, *Page 248 
437, 90 S.Ct. 1189, 1190-91, 25 L.Ed.2d 469, 471 (1970). This Court enforces rights secured to its citizens by the Constitution of the United States. When it does so, it obediently construes those rights in conformity with authoritative constructions placed upon them by the Supreme Court of the United States.Bolton v. City of Greenville, 253 Miss. 656, 666,178 So.2d 667, 672 (1965).
 (2)
The disposition of this case is controlled by Ashe v.Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and its progeny. In Ashe the defendant was charged with the armed robberies of six different people, each occurring at the same time and place. He was put to trial for the robbery of one of the victims, and the jury returned a not guilty verdict. He was then put to trial for the temporally and geographically proximate robbery of a second victim. The Supreme Court held that the second prosecution was precluded under the double jeopardy clause. In analyzing the first trial, the Supreme Court observed
 The single rationally conceivable issue in dispute before the jury [at the first robbery trial] was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. 397 U.S. at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476.
The Court then observed that the question before it was
 Whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the state could constitutionally hale him before a new jury to litigate that issue again. 397 U.S. at 446, 90 S.Ct. at 1195, 25 L.Ed.2d at 477.
The Supreme Court held that it could not.
In explaining its decision and its application of the Double Jeopardy clause, Ashe emphasizes that the verdict at the first trial should be viewed "with realism and rationality". 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. In Ashe as here, the jury at the first trial returned only a general verdict of not guilty. Ashe teaches that, by a study of the issues presented to the jury at the first trial, what was decided may rationally be determined. Ashe announced the "rational jury" test which has been repeated in so many cases, to-wit:
 Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475-476.
We apply the Ashe rational jury approach to the case at bar. What a rational jury could and could not have decided is determined by an examination of what was presented to the jury, what was argued to it. Seen in this light, the only rational
explanation for the jury verdict in the rape trial is that the jury believed that Willie Earl Scott, not Percy Lee Sanders, was the person who broke and entered into the mobile home and raped Mrs. J.B. Ross. A verdict to that effect at the rape trial would have been well within the evidence. True, there are otherirrational interpretations which could be given to the not guilty verdict. But Ashe mandates that we consider only what the jury rationally may have done.
 (3)
Following Ashe several cases, both in the Supreme Court of the United States and in this Court, reaffirm and flesh out these premises. We will discuss briefly a number of these to emphasize the strength of the constitutional mandate for reversal here.
In Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971), the Court was concerned with a situation in which two armed men had entered a store in Jacksonville, Florida and robbed the manager and a customer. Simpson was put to trial for the robbery of the manager but was acquitted. Subsequently he was charged with the robbery of the customer. *Page 249 
As in Ashe, Simpson's alleged identity as one of the robbers was the dominant disputed issue at the first trial. The Supreme Court held that, unless the jury verdict in the first trial could rationally have been grounded upon an issue other than identification of Simpson, the double jeopardy clause precluded his being put to trial for robbery of the customer. Finding no such "other" issue in the first trial, the Supreme Court vacated Simpson's conviction upon the second trial.
In Turner v. Arkansas, 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972), the defendant had originally been indicted and tried on a charge of felony murder, i.e. murder while perpetrating the crime of robbery. Following a verdict of not guilty on this charge, the State procured a new indictment on the charge of robbery only. Defendant invoked his protections under the Double Jeopardy clause. Analyzing the case in collateral estoppel terms as mandated by Ashe, the Court held that the only rational conclusion that could be drawn from the jury verdict in the felony murder trial was that the defendant was
. . . not present at the scene of the murder and robbery, a finding that negates the possibility of a constitutionally valid conviction for the robbery. . . 407 U.S. at 369, 92 S.Ct. at 2099, 32 L.Ed.2d at 802.
When the rule of Simpson and Turner is extrapolated from the facts of those cases, it is seen as a reinforcement of Ashev. Swenson, supra. And when that rule is applied to Percy Lee Sanders' case, reversal is mandated.
The result we reach here is also compelled by our own cases. InState v. Smith, 278 So.2d 411 (Miss. 1973), the defendant was indicted and tried on a murder charge and was found not guilty by the jury. Thereafter, he was indicted for a robbery which took place at the same time and place. The Court analyzed the double jeopardy plea under the principles of Ashe v. Swenson, supra.
At the first trial
 there was testimony that this defendant [Smith] was a participant in the robbery and beating of John Allen Rorer. This defendant denied any knowledge or participation in the crime in any way. 278 So.2d at 414.
In this context, the Smith Court held that the inescapable conclusion to be drawn from the not guilty verdict in the murder trial was that the jury had determined that Smith was not a participant in the crime. Then citing Turner v. Arkansas,supra, the Court held that the State of Mississippi was precluded from putting Smith to trial on the factually, temporally, and geographically proximate charge of robbery.
In State v. Clements, 383 So.2d 818 (Miss. 1980) the defendant was originally indicted for manslaughter. He was acquitted on that charge. He was thereafter indicted on a charge of aggravated assault arising out of the same facts and circumstances. The circuit court sustained Clements' motion to quash based upon his constitutional protections against double jeopardy and on the doctrine of collateral estoppel. The controlling fact question under each indictment was whether Clements
 grabbed the steering wheel of the pickup truck and caused the vehicle to drive into the opposite lane of traffic resulting in the death of Mary Parker. . . . 383 So.2d at 821.
At the first trial Clements had denied grabbing the steering wheel. The jury's not guilty verdict necessarily meant that the State had failed to prove that Clements did grab the steering wheel. In affirming, the Clements Court cited Ashe v. Swenson
and observed that the rule of Ashe "was approved and expanded in Turner v. Arkansas, . . . ." 383 So.2d at 819. Clements
further relied on the Smith case cited above.
Close, but by no means identical, are the facts of McDonald v.Wainwright, 493 F.2d 204 (5th Cir. 1974). In McDonald the defendant was put to trial in a Florida state court on two related charges of rape and assault with intent to commit rape. His primary defense was consent on the part of the prosecuting witness. The jury found him not guilty. Thereafter, Florida sought to try McDonald on a third charge of breaking *Page 250 
and entering with intent to commit rape, a charge arising out of the same general facts and circumstances. On grounds of both collateral estoppel and double jeopardy, the Court of Appeals held the second prosecution precluded by the not guilty verdict at the first trial.
 (4)
Two recent cases in which double jeopardy pleas were denied show the other side of the coin — and make clear that Ashe
mandates reversal here. In Hughes v. State, 401 So.2d 1100
(Miss. 1981), the defendant kidnapped and raped the prosecutrix all as a part of one general occurrence. He was first put to trial on an indictment charging him with the crime of rape and was convicted and sentenced. Thereafter, Hughes was indicted for the crime of kidnapping. He interposed a plea of double jeopardy which was rejected. 401 So.2d at 1105.
In Hughes the defendant entered his second trial, the kidnapping trial, armed with no finding of fact in his favor with which the kidnapping charge could not logically coexist. For the jury in the rape trial in the Hughes case found that Hughesdid in fact commit the rape. The jury's findings at the rape trial are thus wholly consistent with Hughes having also committed a kidnapping.
The Hughes case becomes highly instructive, however, if we alter the proceedings slightly. Suppose that at Hughes' first trial, the trial for rape, his defense was that someone else did the dirty deed. Assume that the state proved that the prosecutrix had been abducted and raped without serious contradiction. Assume further that the question of whether or not Hughes was the man who did it was hotly contested. In that setting, had the jury found Hughes not guilty at the rape trial, without doubt underAshe v. Swenson, his double jeopardy plea when the kidnapping charge was brought on for trial would have been sustained. For there would in that situation be no rational way the jury's verdict could be read other than to say that Hughes was not there. Per force he could not have been the kidnapper.
The case of Otis v. State, 418 So.2d 65 (Miss. 1982), also provides an instructive contrast. In Otis the defendant was named in three separate indictments charging forcible rape of the prosecutrix. The first alleged rape occurred in October, 1979, the second in December of 1979, and the third in March of 1980. Otis was put to trial under the indictment charging rape in October of 1979. He was acquitted. He was subsequently brought to trial under the indictment charging a rape committed in March, 1980, some six months after the date of the alleged offense for which he was acquitted in the first trial. Prior to the second trial, Otis invoked the double jeopardy clause, cited Ashe v.Swenson, and moved that the indictment be quashed. This Court quite correctly overruled his motion because the two indictments charged separate and distinct offenses allegedly committed six months apart. 418 So.2d at 66-67. Here, by way of contrast, the rape and burglary charges arose out of a common nucleus of operative facts.
 (5)
To some collateral estoppel means issue preclusion: where an issue has been litigated in one trial, the losing party is precluded from relitigation. If this were all collateral estoppel means, we would have no problem with the application of the doctrine in criminal cases. It may well be a useful device for analyzing some double jeopardy pleas.
Ashe v. Swenson and progeny, however, construe collateral estoppel to mean much more. Ashe proceeds on the theory that the jury in the first trial had affirmatively found that Ashe had not been one of the robbers. 397 U.S. at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476. Seen in this light, there is a logical infirmity in application of the doctrine of collateral estoppel in criminal cases. That infirmity emerges when one takes seriously the beyond-a-reasonable-doubt burden of proof imposed upon the prosecution. The beyond-a-reasonable-doubt standard has recently been held of constitutional dimensions. See Jackson v.Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It must per force be taken seriously. *Page 251 
In civil cases collateral estoppel functions as though it were a rule of evidence. It stipulates how certain facts may be established at trial. Where an issue of fact is actually litigated and resolved in one trial and where that fact was essential to the judgment in the first trial, that fact is taken as established in subsequent trials involving the same parties. The fact thus need not be — and cannot be — relitigated in the second trial. The party in whose favor such fact was resolved in the first trial is said to enter the second trial with that fact established in his favor. This notion works reasonably well in civil litigation, where facts are established by a preponderance of the evidence, because their existence is by a factor of 51 to 49 more probable than not.
But it doesn't work at all in criminal cases. This is so because by no stretch of the imagination can a not guilty verdict be said to establish affirmatively that the defendant was innocent of the crime.
Technically speaking, a not guilty verdict means that the jury failed to find beyond a reasonable doubt that the defendant was guilty. The jury may well have concluded that there was strong evidence against the defendant though of a lesser dignity than beyond a reasonable doubt. For example, the jury may have found by a preponderance of the evidence that the defendant was guilty. The jury may even have considered that the evidence of guilt was clear and convincing but because it did not rise to the dignity of beyond a reasonable doubt nevertheless, taking their oaths seriously, the jurors returned a not guilty verdict.
Applying these thoughts, all that can really be said of Sanders' rape trial is that the jury, assuming that it acted rationally, did not believe the State had proved beyond a reasonable doubt that he broke and entered into the mobile home and raped Mrs. Ross. The jury may well have believed that the evidence preponderated against Sanders or even that the evidence against Sanders was clear and convincing.
In this context, it makes no sense to say that Sanders entered the second trial, the burglary trial, armed with a jury finding of fact that he had not broken into and entered Mrs. Ross' mobile home. The jury made no such finding and there is no way one can rationally extrapolate such a conclusion from the verdict returned.
We would prefer to cast the court's decision here in pure double jeopardy terms, never mentioning collateral estoppel. There is no doubt that Sanders was put in jeopardy for his breaking and entering at the first trial. There is no doubt that the State sought to put him in jeopardy for the same conduct at the second trial. The jury having acquitted him on the first trial, the double jeopardy precludes the second prosecution. This is what — and all — that need be said. We adopt the collateral estoppel analysis of Ashe v. Swenson here only because it has become so firmly embedded in federal criminal constitutional procedural jurisprudence — illogical though it is. As indicated at the outset we will follow and faithfully apply Ashe v.Swenson — even those parts of it that make no sense. See Boltonv. City of Greenville, 253 Miss. 656, 666, 178 So.2d 667, 672 (1965).
 D.
What has been said above relates solely to the double jeopardy clause of the Fifth Amendment to the Constitution of the United States, as made applicable to the states through the Fourteenth Amendment.
The people of Mississippi have placed in our Constitution a double jeopardy clause. Section 22, Article 3, Mississippi Constitution of 1890 provides
 No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.
The language of our double jeopardy clause is substantially the same as the federal double jeopardy clause. Although we remain unhappy with the way in which collateral estoppel has been used, as just explained, it seems appropriate, in the interest of establishing a common construction for linguistically similar provisions in *Page 252 
the two constitutions, that we hold that the standards and principles applied in this case have equal application in cases where only Section 22 of our Constitution has been invoked.
 III.
As a postscript we note — and wish to condemn — a practice observed. At the rape trial, his counsel explained to the jury that he had been appointed by the court to represent Sanders. We have seen this in other trial records. Attorneys representing defendants on appeal before this Court not infrequently make this statement in their briefs. We have seen attorneys appear for oral argument and introduce themselves as court-appointed counsel for the defendant.
For reasons which we assume are obvious, see United States v.Naylor, 566 F.2d 942, 943 (5th Cir. 1978), this custom or practice, if it is as widespread as we perceive, should bestopped immediately!
 IV.
Prior to trial Percy Lee Sanders filed a motion to dismiss. In essence, this was a motion to quash the instant burglary indictment. Sanders' protections under the Double Jeopardy clause were assigned as grounds in support of the motion. The trial judge carefully considered the motion but in the end denied it. For the reasons explained above, this rule was error. Accordingly, the conviction of Percy Lee Sanders on the charge of burglary as described above is reversed and the sentence of 25 years imposed upon him is vacated. The instant indictment returned against Percy Lee Sanders shall be, and it hereby is, dismissed with prejudice.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and BROOM, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
[1] We have been advised that this burglary indictment has been dismissed nolle prosequi.
[2] The indictment in the case at bar originally charged Sanders with burglary on December 28, 1980, with intent to rape Mrs. J.B. Ross. On the eve of trial the indictment was amended to delete all references to "intent to rape". As amended the indictment charged armed burglary of an inhabited dwelling at night.
[3] In its brief the state emphasizes that during the rape trial the defense offered another alternative theory of acquittal — "lack of penetration". To be sure in his motion for a directed verdict at the close of the state's case, defense counsel charged "that there has been absolutely no proof that there was any penetration. . . ." Had this argument been advanced before the jury, the outcome of this appeal might be different. Our review of the record, however, convinces us of two things on the "penetration" issue:
(1) the lack of penetration argument was never presented to the jury, and
(2) that the evidence before the jury established beyond a reasonable doubt that Mrs. Ross had been "penetrated".
On this latter point consider the important testimony of Dr. H.A. McCrory:
 Q. Would you describe for the jury what you found?
 A. At this time during a pelvic examination, it was noted that the patient had reported to me prior to this time that she had taken a bath and changed her clothes and cleaned herself up. But, at this time she had, the external female genitalia of the labia, or the lips of the vagina, was reddened, had numerous small abrasions about them, including the introitus, or the entrance into the vagina showed the same markings.
 Q. From your examination, Doctor, did you reach an opinion as to the sexual activity Mrs. Ross had?
 A. When you examine a lady that's, I believe she was eighty-three years old, who has had recent penetration of some object which she is not used to, you would usually find numerous small abrasions and edema and swelling of the lips of the internal part of the vagina, and that's what I found. It was my opinion that she had had a recent encounter with some firm object which she was not usually familiar with.
 Q. That object entered her vagina. Is that correct?
 A. That's my opinion.
 Q. Is this opinion within the bounds of a reasonable scientific certainty?
 A. It is.