460 So.2d 1194 (1984)
Owen Lee HARDEN
v.
STATE of Mississippi.
No. 55617.
Supreme Court of Mississippi.
October 17, 1984.
Rehearing Denied January 16, 1985.
*1195 Grady F. Tollison, S. Allan Alexander, Rebecca B. Cowan, Patterson, Tollison, Alexander, Powers & Mills, Oxford, for appellant.
Robert L. Williams, Robert J. Kelly, Hernando, Edwin Lloyd Pittman, Atty. Gen., Marvin L. White, Jr., William S. Boyd, III, Sp. Asst. Attys. Gen., Jackson, for appellee.
EN BANC.
HAWKINS, Justice, for the Court:
Owen Lee Harden appeals from an order of the Circuit Court of the First Judicial District of Yalobusha County denying his petition for a writ of habeas corpus.
Harden was under arrest under indictments for three crimes: conspiracy to murder James B. Williamson, arson of Williamson's house, and arson of Williamson's personal property. In his petition Harden claimed prosecution was barred for these crimes because of his previous acquittal of Williamson's murder, and his having been required to invoke the 5th Amendment privilege against self-incrimination in a co-defendant's subsequent trial for the murder of Williamson. The double jeopardy and self-incrimination rights guaranteed by the 5th Amendment to the U.S. Constitution, and of Article 3, Sections 22 and 26 of our Mississippi Constitution are at stake.

FACTS
In the early morning of March 22, 1982, the residence of James B. Williamson was observed by a passer-by to be on fire. Help was summoned; the entire house, with the exception of the carport, was consumed. The charred body of Williamson *1196 was found inside. At the time of his death, Williamson was 64-years-old, and lived on Highway 32 about three and one-half miles east of Highway 51 in Yalobusha County.
On January 27, 1983, the grand jury of the First Judicial District of Yalobusha County indicted Owen Lee Harden and two others for capital murder, the pertinent portions of which read as follows:
CECILIA ANN WILLIAMSON, a/k/a COOKIE WILLIAMSON, OWEN LEE HARDEN, and LARRY SHELTON HENTZ ... on or about the 22nd day of March, 1982 ... did unlawfully and willfully and feloniously and intentionally, and of their malice of forethought, kill and murder JAMES B. WILLIAMSON, a human being, said murder was perpetrated by OWEN LEE HARDEN, who had been offered or had received something of value for committing the murder and CECILIA ANN WILLIAMSON, a/k/a COOKIE WILLIAMSON, and LARRY SHELTON HENTZ, were parties to the murder and are charged as principals in direct violation of Section 97-3-19(2)(d) Mississippi Code 1972 Annotated as amended ...[1]
We surmise, as we must, that a change of venue was granted Harden, as well as a severance, and he went to trial for murder in DeSoto County on July 11, 1983.
Following a several-day trial Harden was acquitted.
On January 4, 1984, the grand jury of the First Judicial District of Yalobusha County returned three indictments involving Harden, Mrs. Williamson and Hentz.
Indictment No. 3872 charges Harden, Mrs. Williamson, and Hentz, as an unindicted co-conspirator, conspired to murder Williamson, in violation of § 97-1-1 of the 1972 Code.
Indictment No. 3873 has two counts. Count One charges that Harden, Mrs. Williamson, and Hentz, as an unindicted co-conspirator, conspired to burn the dwelling house of Williamson in violation of § 97-1-1 of the 1972 Code. Count Two charges Harden and Mrs. Williamson with feloniously burning the dwelling house of Williamson, in violation of § 97-17-1 of the 1972 Code.
Indictment No. 3874 charges Harden and Mrs. Williamson with feloniously burning the personal property of Williamson, in direct violation of § 97-17-7.
The arson charges in each of the indictments allege the dates of the offenses March 22, 1982. The conspiracy part of each of the indictments allege the conspiracy as beginning in December, 1981, as culminating in March, 1982.
Following his indictment, Harden was placed in custody on these charges. It is entirely possible he was already in jail, but the return of the sheriff states the capias was served upon him on January 4, 1984.
On January 9 Harden filed a petition for writ of habeas corpus. He alleged that he was being illegally detained against his will for crimes in which he had been acquitted, that his imprisonment violated § 22, Article 3 of the Mississippi Constitution, and the 5th and 14th Amendments of the United States Constitution. He also alleged that he was indigent and requested the court file and copies of the trial transcript in the murder case in which the jury returned the verdict of not guilty in DeSoto County, including all witnesses except defense witnesses Sawaya and Dr. Thomas Lombardo.
He made a separate affidavit that he was indigent and had no source of income.
On January 13 by separate motion he requested that the court, pursuant to Rule 8.07 of the Mississippi Uniform Criminal Rules, provide him with specified portions of the transcript of the prior proceeding on his petition for writ of habeas corpus.
*1197 The final paragraph of this motion states the following, however:
WHEREFORE, PREMISES CONSIDERED the defendant requests that the court order that the portions of the trial transcript as requested by the defendant in his Petition of Writ of Habeas Corpus be provided him without charge or in the alternative that the tapes be made available to him. [Emphasis added]
On February 2 the circuit judge entered an order as follows:
ORDERED, AND ADJUDGED that the court reporter in possession of the tapes of the trial of State of Mississippi v. Owen Lee Harden, No. 4038 immediately make the tapes available to Ms. Janet Clemens, the court reporter ruled by the Court to be competent to transcribe said tapes for use by defendant.
Ms. Clemens did not transcribe the entire record of Harden's murder trial. She did transcribe portions of the opening statement and closing argument of the prosecuting attorney Robert L. Williams. She also transcribed testimony of James Vickers, Sheriff L.A. Jones, Tommie Lee Burchfield, Barry Joe Tutor, Hope Langston, and Tommy Lee Johnson.
The habeas corpus hearing was held on February 10, 1984, before the same circuit judge who presided at the murder trial of Harden.
The transcribed portions of the witnesses' testimony offered by Harden at the hearing may be summarized as follows:
James Vickers, an expert in the investigation of fires, testified the Williamson fire was incendiary, and had been intentionally set.
Sheriff Jones testified he arrived at the burning house around 7:30 o'clock in the morning of March 22, 1982, saw the house, with the exception of the garage portion, was burned. He identified portions of the burned house and a badly burned body.
Tommie Lee Burchfield, an oral surgeon, examined x-rays of the dental remains with known x-rays of Williamson during his lifetime, and concluded that the deceased was Williamson.
Barry Joe Tutor testified Harden at one time confided in him that he had shot a man and got paid for it.
Hope Langston, a neighbor living about 300 yards from the Williamson house, testified on the night previously she heard cars going in and out, car doors slamming.
Tommy Lee Johnson was apparently the first disinterested witness to observe the fire, when he was on the way to work around 6:15 a.m. He stopped, walked to the door and knocked and then went to the Langston home for help.
The opening statement of prosecuting attorney Williams promised the jury that the state would prove Harden had been hired by Hentz to kill Williamson, that Harden went in the back door and shot Williamson with a shotgun plug as he lay asleep. In his closing argument Williams argued to the jury that he had proved these essential facts.
Counsel for Harden saw no need to have any other part of the record transcribed, and neither did the state. Both sides offered tapes of the entire trial as exhibits, no doubt confident members of this Court would gladly complete their task.
With no objections from the respondent, the Honorable Rebecca Barge Cowen, a member of the defense team at Harden's murder trial, testified from her notes what had been said at the murder trial. We will not repeat the witnesses whose testimony was transcribed.
As to the testimony regarding Hentz, Miss Cowen stated:
Yes. And looking at my notes, basically Mr. Hentz testified about a gallon jug of gasoline being taken by Owen Lee Harden to the Williamson house. He testified about Mr. Harden carrying the gasoline and he also testified about certain statements that Lee Harden made concerning feeling ill after he supposedly had burned the Williamson home.
*1198 When asked if Mr. Hentz had testified anything else, again from her notes Miss Cowen testified:
Yes. He also gave a statement that, the supposedly statement made by Lee Harden that he killed him and burned the house up.
Then Mrs. Cowen was asked about a witness named Morrow. What did he testify?
He also made reference to the gasoline. He testified that Lee Harden had supposedly told him that he talked about the smell and the burning house and that  I have in my notes that he almost did not get out, scared when the fire started, that he supposedly started. That it scared him and he could not get out of the room.
Mrs. Cowen also said that the above was what Morrow testified Harden had told him.
Mrs. Cowen also testified about Harden being called to the witness stand in the trial of Mrs. Williamson which had been transferred to Pontotoc County. We will return to this testimony later. [R. 74]
When Harden rested, Honorable Robert L. Williams testified about what had occurred in the murder trial of Harden, and about Harden being called as a witness in the murder trial of Mrs. Williamson in Pontotoc County, to which we will return later.
As to the Harden murder trial, Williams testified the defense counsel for Harden in closing argument posited to the jury that the autopsy of the remains showed Williamson died not over an hour to one and one-half hours following eating, that his bereaved widow testified that he had eaten 8:00 to 9:00 p.m. on the night of March 21. Therefore, since the state's version of the homicide was that it occurred between 5:00 and 6:00 o'clock a.m. on March 22, Harden just could not have done it.
Then according to Williams, the able defense counsel concluded:
My client  the state has not proved that my client killed James Williamson. They may have proved that he is guilty of some other crime including arson but he is not on trial for arson. The only question that you are to decide is did he kill James Williamson or didn't he, not whether he burned the house.
On cross examination Williams conceded that the "theory" of the state's case was that Harden, in the company of Hentz, went to the house with gasoline, shot Williamson and burned the house. He also conceded that there was testimony to that effect.
Williams also acknowledged that the testimony of his opening statement and closing argument was accurate.
Williams was also asked about the part of Mrs. Williamson's murder trial in Pontotoc County in which Harden took the 5th Amendment.
Harden claimed he was entitled to be released upon his petition for the additional reason that his 5th Amendment rights had been violated by the state's calling him as a witness in the murder trial of Mrs. Williamson.
As noted above, at the habeas corpus hearing Miss Cowen testified, and Mr. Williams testified about Mr. Harden being called as a state's witness at the murder trial of Mrs. Williamson in January, 1984, in Pontotoc County. Harden's complaint, as to the Pontotoc County proceeding, is embodied in a bill of exceptions signed by the presiding circuit judge, and we will not summarize the habeas corpus hearing hearsay testimony of Mrs. Cowen and Mr. Williams.
The bill of exceptions reflects Harden was subpoenaed on January 15, 1984, to testify as a witness in Mrs. Williamson's trial, and that on January 24, 1984, he was called to the witness stand.
Harden's counsel advised the state that Harden would invoke the 5th Amendment. In chambers Harden was asked two questions: Did he kill Williamson, and where he was on March 22, 1982? He refused to answer.
Thereafter, in the presence of the jury Harden was asked four questions: did he kill Williamson, did he throw a shotgun in *1199 the river, had he confessed to murdering Williamson, and whether or not he was paid $1,100 to kill Williamson.
He refused to answer these questions, again invoking the 5th Amendment.
Following argument by counsel, the circuit judge on February 21, 1984, entered an order denying the petition:
The Court has reviewed the testimony of three (3) witnesses and has reviewed the evidence in the form of the record of the trial of State of Mississippi vs. Owen Lee Harden, DeSoto Circuit Court Cause No. 4038. The Court has reviewed the tape recordings of that trial as well as the documents filed with the Circuit Court Clerk in that cause.
The Defendant and the State of Mississippi presented oral argument to the Court and cited case law. This Court finds that it need not consider any of the United States Supreme Court decisions because the Mississippi Supreme Court has thoroughly covered the controlling rules of law in State vs. Sanders [Sanders v. State], Miss. 1983, 429 So.2d 245; Smith vs. State, Miss. 1983, 429 So.2d 252 and State vs. Cox, Miss. 1976, 339 So.2d 1374.
This Court finds that the "rational jury test" is the controlling principle to consider. Based upon this Court's recollection of the facts, argument of counsel and legal issues presented to the jury in the trial of State vs. Harden, this Court concludes that the general jury verdict of not guilty to the charge of capital murder does not foreclose the State from prosecuting this Defendant in the cases sub judice. The Court finds that the jury in State vs. Harden could logically have found the Defendant not guilty of capital murder; and, that general jury verdict does not foreclose the State from prosecuting the Defendant upon charges of arson arising from the burning of the dwelling and personal property of James Williamson on March 22, 1982.
A criminal defendant may be prosecuted for more than once statutory offense arising out of a basic set of facts. Blockburger vs. United States, 1931, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306]; Smith vs. State, supra. And it matters not if the criminal defendant was acquitted or convicted of one offense, for the acquittal or conviction does not exempt the defendant from subsequent prosecution for a statutorily different offense.
In the capital murder charge was based upon a conspiracy. At least one of the arson indictments is based upon a conspiracy. Due to the peculiar nature of the elements and the evidence in conspiracy trials, the Court may logically conclude that the Harden trial jury found that the State failed to meet its burden of proof beyond a reasonable doubt that Harden was a co-conspirator in the murder charge; yet, that same jury need not have considered whether or not Harden was a co-conspirator to or perpetrator of arson.
Based upon the foregoing findings and reasoning, the Court denies and dismisses the Habeas Corpus Petitions upon the evidence and rules of law.
[Record, Vol. II, pp. 171-A, 171-B]
The circuit judge also on February 21, 1984, entered an order granting bail to Harden as follows:
Upon the charge of conspiracy to commit arson, bail is set in the amount of $25,000; upon the charge of arson of a dwelling, bail is set in the amount of $25,000; and upon the charge of arson of personal property, bail is set in the amount of $10,000.
Harden appealed. On May 2, 1984, he filed with this Court a motion to advance the cause on our docket, which was sustained May 9. The record was filed May 21.
Harden's assignment of error, abstract and brief were filed in this Court May 31.
The state made no response to Harden's brief, until on July 18 when it filed a motion to dismiss the appeal, or in the alternative to stay briefing and argument schedule for a limited remand to the circuit court to transcribe the tapes. We denied the *1200 motion August 9. The state on August 16 petitioned for a rehearing on our denial.
The attorney general's office and the district attorney filed separate briefs on August 24. We heard the case on oral argument on August 28.

LAW
The state is entitled to a reason for our denial of its motion to dismiss the appeal or remand.
A case such as this involving serious constitutional questions, and depriving a person of his liberty can only be viewed with the utmost gravity. Indeed, habeas corpus matters are preference cases. See § 9-1-19 and § 11-43-1 et seq. Miss. Code Ann. (1972).
The circuit judge in this case entered an order denying the petition on February 24, 1984. We find no effort whatever on the part of the state to have the record transcribed until the state's belated motion filed almost six months later.
We cannot be kindly disposed to a motion filed under circumstances such as this.
If Harden's counsel has seen that we have been furnished sufficient record to grant relief, we will inquire no further. Of course, the obligation is his to see that we do have sufficient record. If the state is of the view that other portions of the record are important or necessary to support its position, then it should have taken appropriate steps to see we were furnished it.
This view as to the missing portions of the record is compelled because the state took no reasonably prompt action to see that the entire record was transcribed.

DOUBLE JEOPARDY
Harden first argues that because of his acquittal of the capital murder indictment, any present prosecution of the arson indictments is barred,[2] because to do so would constitute double jeopardy, prohibited by the 5th Amendment to the United States Constitution and Article 3, Section 22 of our Mississippi Constitution.
Two of the strongest imperatives under which an appellate court operates must be weighed here.
The first is the inviolate right of any person not to be prosecuted twice for the same offense. This treasured right is so deeply imbedded in our national conscience and in our system of laws that any violation is absolutely odious.
The other is the reluctance of an appellate court to interfere with trial proceedings. Again, experience has taught us that our function is to decide cases which have been concluded in the trial court, and on lawful appeal here. Any person who feels aggrieved at a lower court decision has an absolute right of appeal to this Court, at which time all his grievances can be addressed by us.
This Court has no right, and no authority to interfere with trial proceedings except in those rare cases where a trial court is obviously going beyond any semblance of its lawful authority. In Re: Evans, 524 F.2d 1004 (5th Cir.1975); In Re Illinois Central R. Co., 192 F.2d 465 (5th Cir.1951); Boydstun v. Perry, 249 So.2d 661 (Miss. 1971); Illinois Central RR Co. v. Moore, 215 So.2d 419 (Miss. 1968); Everitt v. Lovitt, 192 So.2d 422 (Miss. 1966); and Wilby v. Board of Supervisors of Jones County, 226 Miss. 744, 85 So.2d 195 (1956). If there is doubt, we resolve it in favor of non-interference. Chatham v. Johnson, 195 So.2d 62 (Miss. 1967); Wilby, supra; Overstreet v. Lord, 160 Miss. 444, 134 So. 169 (1931); Board of Supervisors of Rankin Co. v. Lee, 147 Miss. 99, 113 So. 194 (1927); and Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723 (1908). The wisdom of this policy needs no explanation.
If Harden has presented us with a double jeopardy violation in his habeas corpus petition, however, it is our duty to *1201 interfere, and tell the state he cannot be prosecuted. For, such a grave constitutional violation would be one of those exceptional circumstances obligating this Court to abort trial proceedings.
The double jeopardy right has been interpreted to mean not only is the state prohibited from putting an accused to trial twice for the same crime, but also, if, by the jury's acquittal in the first trial it of necessity had to find in favor of the accused on facts presently relied upon by the state in the second trial for another crime, then the second prosecution is prohibited. See Sanders v. State, 429 So.2d 245 (Miss. 1983).
An excellent example of this principle may be found in State v. Clements, 383 So.2d 818 (Miss. 1980). Clements was riding in a pickup involved in a head-on collision with a car in which two of the automobile occupants were killed and another seriously injured. The culpable act with which Clements was charged was suddenly grabbing the steering wheel of the pickup causing it to swerve left into the path of the on-coming car. Clements was indicted for manslaughter in the death of two of the car's occupants, and aggravated assault in the serious injury of another.
Clements was first tried and acquitted on the manslaughter indictment. Clements then moved to quash the indictment against him for aggravated assault, which was sustained by the trial judge. The state appealed this dismissal, and we affirmed because the simple dispositive issue of whether Clements grabbed the steering wheel was in both the manslaughter and the aggravated assault cases.
Unfortunately, few cases are as clear-cut as Clements. In Sanders, the accused was indicted for the crime of burglary of an inhabited dwelling, and rape of the inhabitant. He was first put to trial for the rape charge. Sanders took the stand in his own defense and testified he did not enter the victim's house and did not rape her, but that another person named Willie Earl Scott did, and he, Sanders, had nothing to do with it. The only issue before the jury in the rape trial was whether Sanders broke into the house and raped the victim, or Willie Earl Scott did. The jury acquitted Sanders of the rape charge.
Sanders was subsequently tried and convicted under the burglary indictment. We reversed and discharged Sanders, holding that the jury finding of fact in favor of Sanders in the rape charge could not "logically co-exist" with a jury finding him guilty of burglary.
Noteworthy is the fact that Sanders took the stand and testified in his case, while in the murder case Harden did not take the stand. We thus do not have the benefit of Harden's specific defense.
We need not labor the point. The lesson, with cases cited, is thoroughly set out in Sanders.
Our inquiry is whether or not a jury finding of not guilty in the capital murder trial of necessity, from the evidence before it, found Harden was not implicated in the arson of Williamson's home and personal property.
We certainly cannot say from what we have before us that when the jury found Harden not guilty of capital murder it also found in his favor on the arson charges.
While the state appears periously close to breaking the wire triggering the double jeopardy protection, it may not be. We can go no further than what is before this Court in this proceeding.
In reaching this conclusion we do not consider the trial tapes which have not been transcribed.

PRIVILEGE AGAINST SELF INCRIMINATION
Harden, over the objection of his counsel, was called as a witness in the case against Mrs. Williamson in Pontotoc County. He was not on trial in this proceeding. He refused to testify.
He now asserts that the mere fact he was placed upon the stand and required to exercise his 5th Amendment privilege against self-incrimination bars subsequent *1202 prosecution for the arson charges. It is doubtful whether any of the questions asked dealt with the arson charges, but there is no need to address this proposition.
Harden cites no authority for the proposition that when a person is called as a witness in a proceeding in which he, himself, is not on trial before a jury, and in which he refuses to testify he is granted immunity from subsequent prosecution. We have found no such authority. It is when the witness is compelled to testify that the 5th Amendment protection against subsequent prosecution comes into play. See: People v. Linick, 79 A.D.2d 925, 434 N.Y.S.2d 423 (1981). We therefore find this contention without merit.
While the excessiveness of bail is not addressed in Harden's petition, we must note it is manifestly excessive. Upon proper application the trial court under the law must set a reasonable bail.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.
NOTES
[1] This incredibly lacking record did not include a copy of the indictment, and no record of the cause of Williamson's death. A copy of the indictment was furnished, by Court request, just prior to the date set for oral argument. For the cause of death, counsel on both sides rely on the opening statement and closing argument of the prosecuting attorney, and their statements in briefs.
[2] We take the state at its word that it has dismissed the indictment charging Harden with conspiracy to commit murder.