# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00820-SCT

*STATE OF MISSISSIPPI*

*v.*

*DARRELL OLIVER*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2002 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | G. GILMORE MARTIN |
| ATTORNEY FOR APPELLEE: | PATRICK JOSEPH McNAMARA, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/02/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    The State of Mississippi appeals the dismissal by  the Circuit Court of Warren County of the indictment charging Darrell Oliver with possession of cocaine.  Because the trial court's dismissal of a petition to revoke a previously imposed suspended sentence based upon new criminal charges does not prevent a subsequent indictment and trial on the same criminal charges, we reverse and remand.

## FACTS AND PROCEEDINGS
## IN THE TRIAL COURT

¶2.    On July 10, 2001, officers of the Vicksburg Police Department were dispatched to the Relax Inn because of a reported disturbance caused by an irate female. Upon their arrival, the female was not in sight

but a trail of blood led the police officers to Room 406. The officers knocked on the door of the room, and it was opened by Darrell Oliver. After a conversation with Oliver on the walkway outside of the room, Sergeant William Combs entered the room to check on the well-being of the unnamed female. After a brief search of the bathroom, Officer Combs discovered the female hiding in the shower. Officer Combs further discovered on a table a green leafy substance that had the appearance and smell of marijuana. Oliver then acknowledged that he was on probation and gave the officers the name of his probation officer. Combs obtained verbal consent to search the room; however, he soon became suspicious, due to the actions of Oliver, that Oliver might have some substance on his person. Combs then instructed Oliver to enter the bathroom and submit to a body cavity search. Upon entering the bathroom, Oliver threw into the toilet a substance which had been concealed on his person. The officers alleged this substance was cocaine. A struggle ensued, resulting in Oliver's arrest for possession of cocaine. Oliver was subsequently charged by the Vicksburg Police Department with possession of cocaine with the intent to deliver.

¶3.     Inasmuch as Oliver was a prior convicted felon still under a suspended sentence and supervised probation at the time of the events of July 10, 2001, the State, on August 22, 2001, filed a petition to revoke Oliver's prior suspended sentence, alleging that he had committed a new offense in violation of the terms of the previously imposed suspended sentence and supervised probation.[1]  On August 24, 2001, a revocation hearing was held in the Circuit Court of Warren County involving the alleged violations of

---

[1]On March 20, 1996, in the Circuit Court of Warren County, Oliver was convicted for the crime of sale of cocaine and sentenced, inter alia, to a term of eight years, with four years suspended plus five years supervised probation to commence upon his release from custody. One of the stated terms of probation was that Oliver "shall hereafter commit no offense against the laws of this or any other state, or the United States." Needless to say, as of July 10, 2001, Oliver was still under the terms of his supervised probation.

2

probation. Oliver, who was represented by counsel at the revocation hearing, waived the required five-day notice. At the close of the State's case-in-chief, Oliver moved to dismiss the charges. The trial court granted the motion, finding that the State failed to prove cocaine possession with the intent to deliver because no crime lab report was introduced into evidence establishing that the substance was in fact cocaine.

¶4. Subsequently on October 16, 2001, Oliver was indicted by the Warren County Grand Jury on the charge of possession of cocaine, enhanced as a subsequent drug offender under Miss. Code Ann. § 41-29-147 (Rev. 2001). Oliver then filed a motion to dismiss the indictment or, in the alternative, to suppress evidence. A hearing was held on January 25, 2002, and on March 7, 2002, the trial court granted Oliver's motion to dismiss the indictment on the grounds of collateral estoppel. The trial court reaffirmed its decision on April 19, 2002. The State timely perfected this appeal citing only one issue for this Court's consideration–whether the trial court erred in dismissing the indictment charging Darrell Oliver with possession of cocaine on the grounds of collateral estoppel.

## DISCUSSION

¶5. In considering a motion to dismiss, the trial court should consider the evidence fairly and should dismiss the case only if it would find for the defendant. *Alexander v. Brown*, 793 So.2d 601, 603 (Miss. 2001) (citing *Stewart v. Merchants Nat'l Bank*, 700 So.2d 255, 259 (Miss. 1997)). The court must deny a motion to dismiss "only if the judge would be obliged to find for the [State] if the [State's] evidence were all the evidence offered in the case." *Id.* Therefore, this Court applies the "substantial evidence/manifest error" standards to an appeal of a grant or denial of a motion to dismiss. *Id.*

¶6.     The State argues the trial court erred by dismissing the indictment on the grounds of collateral estoppel. The State also argues that where there is no violation of the double jeopardy clause of either the United States Constitution or the Mississippi Constitution, then collateral estoppel is inapplicable.

¶7.     The doctrine of collateral estoppel provides that an issue of ultimate fact determined by a prior judgment may not be relitigated between the same parties in a subsequent action. *Ashe v. Swenson*, 397 U.S. 436, 442, 90 S.Ct. 1189, 1193, 25 L.Ed.2d 469 (1970). Because *Ashe* and its progeny construe collateral estoppel to mean much more, this Court, although it has followed *Ashe* and its progeny, has not extended the protection beyond that provided by double jeopardy. *Sanders v. State*, 429 So.2d 245, 250 (Miss. 1983). In *Sanders* this court stated:

> In civil cases collateral estoppel functions as though it were a rule of evidence. It stipulates how certain facts may be established at trial. Where an issue of fact is actually litigated and resolved in one trial and where that fact was essential to the judgment in the first trial, that fact is taken as established in subsequent trials involving the same parties. The fact thus need not be--and cannot be--relitigated in the second trial. The party in whose favor such fact was resolved in the first trial is said to enter the second trial with that fact established in his favor. This notion works reasonably well in civil litigation, where facts are established by a preponderance of the evidence, because their existence is by a factor of 51 to 49 more probable than not.
>
> But it doesn't work at all in criminal cases. This is so because by no stretch of the imagination can a not guilty verdict be said to establish affirmatively that the defendant was innocent of the crime.
>
> Technically speaking, a not guilty verdict means that the jury failed to find beyond a reasonable doubt that the defendant was guilty. The jury may well have concluded that there was strong evidence against the defendant though of a lesser dignity than beyond a reasonable doubt. For example, the jury may have found by a preponderance of the evidence that the defendant was guilty. The jury may even have considered that the evidence of guilt was clear and convincing but because it did not rise to the dignity of beyond a reasonable doubt nevertheless, taking their oaths seriously, the jurors returned a not guilty verdict.

4

*Id.* at 251. In *Sanders*, this Court adopted the collateral estoppel analysis of *Ashe* only because "it has become so firmly embedded in federal criminal constitutional procedural jurisprudence--illogical though it is." *Id.*

> Because collateral estoppel does not work in [all] criminal cases, "[W]e would prefer to cast the Court's decision here in pure double jeopardy terms, never mentioning collateral estoppel." *Sanders v. State*, 429 So.2d 245, 251 (Miss. 1983). Whether framed in terms of "collateral estoppel"--that the issue of fact has been previously decided unfavorably to the [S]tate--or in terms of "double jeopardy"--successive prosecutions for the same criminal conduct--the analysis is *identical*.

*Griffin v. State*, 545 So.2d 729, 734 n.1 (Miss. 1989) (emphasis added).

¶8.     Because of the different issues in a revocation hearing and trial on the indictment, the different burdens of proof, the different arbiters of fact, and issues of public policy, collateral estoppel does not forbid subsequent prosecution. The specific issue litigated in a revocation hearing differs from that of a trial on the merits. A revocation hearing is conducted to enforce the court's order imposing conditions on a defendant under a suspended sentence. The issue to be determined at trial on the indictment is whether the State has proven beyond a reasonable doubt the elements of the charge. These are very different issues; therefore, collateral estoppel does not apply.

¶9.     A revocation hearing requires proof showing a defendant more likely than not violated the terms of probation. *Wallace v. State*, 607 So. 2d 1184, 1190 (Miss. 1992). This decreased burden of proof also allows for a relaxed rules of evidence and procedure. *See Williams v. State*, 409 So.2d 1331, 1332 (Miss. 1982) ("It is a narrow inquiry; the process [of a revocation hearing] should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."). The sole determiner of fact is a judge. This Court has also held that "[a]n order

5

revoking a suspension of sentence or revoking probation is not appealable." (***Pipkin v. State***, 292 So.2d 181, 182 (Miss. 1974). *See also* ***Beasley v. State***, 795 So.2d 539, 540 (Miss. 2001).

¶10.    A revocation hearing is comparable to a preliminary hearing. Both hearings are conducted to determine probable cause, and both hearings are decided by a single arbiter of fact. Like a revocation hearing, a preliminary hearing also involves relaxed rules of evidence. Pursuant to URCCC 6.04, the dismissal of a charge at a preliminary hearing does not bar further prosecution by the State for the same offense.

¶11.    "The question then is primarily whether or not a revocation hearing comes within th[e] term [criminal prosecution]. Clearly, it does not. This statement is borne out by all authorities." ***Williams***, 409 So.2d at 1331-32. Because the subsequent indictment was not barred by the dismissal of the prior probation revocation proceeding, the circuit court erred in dismissing the indictment.

<u>CONCLUSION</u>

¶12.    The trial court erred in dismissing the indictment charging Darrell Oliver with cocaine possession on the grounds of collateral estoppel. Therefore, the judgment of the Warren County Circuit Court is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶13.    **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J.,  WALLER AND COBB, JJ., CONCUR.  EASLEY, J., CONCURS IN RESULT ONLY.   GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.  DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶14.    Because I disagree with the majority, I must respectfully dissent. The majority cites no precedent or authority for its conclusion that "These are very different issues; therefore, collateral estoppel does not apply." Maj. op. ¶ 8. In fact, the State's burden of proof at a revocation hearing is less than at a trial. The State did not even meet the lesser burden at the revocation hearing. Yet the majority concludes that the State should be given a second opportunity at a trial where the burden of proof is beyond a reasonable doubt.

¶15.    On July 10, 2001, officers of the Vicksburg Police Department were dispatched to the Relax Inn because of a disturbance by an irate female. Upon arrival, the female was not in sight but a trail of blood led to room 406. The officers knocked on the door of the room, and it was opened by Darrell Oliver. After a conversation with Oliver on the balcony outside of the room, Sergeant William Combs reportedly entered the room to check on the well being of the unnamed female. After a brief search of room 406's bathroom, Combs discovered the female hiding in the shower. The officer further observed on a table a green leafy substance that had the appearance and smell of marijuana. Oliver then acknowledged that he was on probation and gave officers the name of his probation officer. Combs obtained a verbal consent to search the room. Combs became suspicious, because of Oliver's actions, that he might have some substance on his person. Shortly thereafter, but before any arrest were made, Combs instructed Oliver to enter the bathroom and submit to a strip/body cavity search. Oliver then threw into the toilet a substance which had been concealed on his person and was alleged to be cocaine. A struggled ensued, and during that struggle, Oliver was placed under arrest for possession of cocaine. Oliver was subsequently charged by the Vicksburg Police Department with possession of cocaine with the intent to deliver.

7

¶16.     Oliver was under a suspended sentence for a prior conviction for sale of cocaine.  The State filed a petition to revoke the suspended sentence on August 22, 2001, alleging that Oliver had committed a new offense in violation of his probation.  He was charged with possession of cocaine with intent to deliver, possession of marijuana, and failure to pay supervision fees.

¶17.     On August 24, 2001, a revocation hearing was held in the Circuit Court of Warren County involving the alleged violations of probation.  At the close of the State's case-in-chief, Oliver moved to dismiss the charges on general grounds. The court ruled in favor of Oliver finding that the State failed to prove possession with intent to deliver because there was neither a  crime lab report nor was there any other evidence to establish that the substance was in fact cocaine.

¶18.     Subsequently on October 16, 2001, Oliver was indicted by the Warren County Grand Jury on the charge of possession of cocaine, enhanced as a subsequent drug offender under Miss. Code Ann. § 41-29-147 (Rev. 2001).  This is the same charge that was the subject of the prior revocation hearing.

¶19.     Oliver then filed a motion to dismiss the indictment or in the alternative to suppress evidence.  A hearing was held to address  this motion on January 25, 2002.  The trial court entered an opinion on March 7, 2002, granting Oliver's motion on the grounds of collateral estoppel and reaffirmed its decision on April 19, 2002.

¶20.     The doctrine of collateral estoppel provides that an issue of ultimate fact which was determined by a valid and final judgment may not be relitigated between the same parties in a subsequent action. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).  Moreover, collateral estoppel has been defined by the U. S. Supreme Court as

'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than fifty years ago in *United States v. Oppenheimer* . . . .

*Id.* at 443. "This doctrine is a practical civil extension of the Double Jeopardy Clause in the Fifth Amendment to the United States Constitution, which states that 'nor shall any person be subject for the same offence to be twice put into jeopardy of life or limb. . . .' U.S. Const. amend. V." *Farris v. State,* 764 So. 2d 411, 423 (Miss. 2000). It is evident from the courts' repeated recognition of the public interest in the stability of this doctrine that collateral estoppel remains a permanent fixture in this society. *Cotton v. Walker,* 164 Miss. 208, 144 So. 45, 47 (1932). We have has determined that collateral estoppel is applicable in criminal cases. *Pickle v. State*, 791 So.2d 204 (2001).

¶21.   Here, it is clear that the State is attempting to relitigate the issue of whether Oliver possessed cocaine at the Relax Inn on July 10, 2001. This issue was fully litigated at the revocation hearing held in August, 2001. Testimony was given by three State witnesses in an attempt to connect the alleged cocaine with Oliver. At this hearing, it was determined that probable cause did not exist to warrant the search of Oliver and the alleged cocaine was never proven to, in fact, be cocaine. Additionally, the arrearage in supervision fees was not a factor in the action. The presence or possession of marijuana was never established, and no arrest or charge relating to marijuana was ever made. The findings by the trial court led to the dismissal of that revocation proceeding, and the elements of collateral estoppel were met in the case at bar. This issue may not be relitigated in a subsequent action. Therefore, the dismissal of the

9

indictment was proper by the trial court.  For the reasons stated, I find that collateral estoppel applies and bars the subsequent indictment of Oliver after the State failed to prove the charges at the prior revocation hearing. Accordingly, I would affirm the trial court's judgment.

**McRAE, P.J., JOINS THIS OPINION.**