IN THE SUPREME COURT OF MISSISSIPPI

NO. 95-CA-00593-SCT

*GEORGE DAVID TOKMAN*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/95 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | GLEN WHITE |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 2/12/98 |
| MOTION FOR REHEARING FILED: | 4/3/98 |
| MANDATE ISSUED: | |

BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.

BANKS, JUSTICE, FOR THE COURT:

The appellant, George David Tokman, was originally convicted of capital murder and sentenced to death. That death sentence was reversed and remanded for resentencing. While awaiting resentencing, Tokman entered a plea agreement with the State, avoiding the possibility of death. He now assigns as error a double jeopardy violation, involuntary plea bargain agreement, insufficiency of the evidence, ineffective assistance of counsel, an improper waiver of a statute of limitation violation, and cumulative error. Because we find that none of these arguments have merit, we affirm the lower court proceedings.

**I.**

This Court first became involved with Tokman during the appeal of his original conviction and sentence for capital murder. *See **Tokman v. State**,* 435 So. 2d 664 (Miss. 1983). The instant case

stems primarily from those facts, and we therefore briefly recite them.

On or about August 22, 1980, Tokman and two cohorts, Jerry Fuson and Michael Leatherwood, were members of the United States Army and were stationed in Fort Polk, Louisiana. The threesome visited Jackson to obtain Fuson's car that had previously been left in Jackson. After being in Jackson for about three and a half days, they decided to rob a cab driver as they had no money. According to Fuson, who testified for the State, Tokman and Leatherwood also decided to kill the cab driver.

Sixty-five-year-old Albert Taylor was dispatched to pick up the three men. They instructed him to take them to a deserted location where Leatherwood placed a rope around the cab driver's neck and pulled him into the back seat. Fuson stopped the cab while Tokman got into the driver's seat and drove the cab to the rear of Meadowbrook Cinema. Fuson then left the group and retrieved his car. He returned to the scene of the crime shortly after that where he picked up Tokman and Leatherwood. As they drove away, Leatherwood commented that Tokman stabbed Taylor. Tokman did not deny the statement. According to Fuson, Tokman later stated that he cut his hand while stabbing the cab driver. They stole about $11.50, a pistol, wallet, two money bags, and a set of keys from Taylor.

On August 24, 1980, a Jackson Police Department sergeant found Taylor's body. An autopsy revealed that he died from blows to the head with a dull blunt object. A fingerprint taken from a window of the cab matched Tokman's. A nurse from a hospital in Vicksburg testified that at 1:30 a.m. on August 24, three white males came into the emergency room of the Regional Medical Center. One man identified himself as George David Tokman. He had blood on his clothes and a cut on his hand. He received five stitches in his right hand. Another witness, who knew Tokman, Fuson, and Leatherwood from the Army, testified that Tokman told him they killed a cab driver in Jackson, Mississippi and that Tokman bragged about the murder as he showed him a newspaper article about the crime.

A jury found Tokman guilty of capital murder, and we affirmed his conviction and sentence of death. *Tokman v. State*, 435 So. 2d 664. On October 01, 1984, however, Tokman filed a petition for post-conviction relief that contained nineteen claims for relief, including ineffective assistance of counsel. The State responded that an evidentiary hearing was necessary as the record was insufficient to determine whether Tokman did, in fact, receive effective assistance of counsel. Therefore, in *Tokman v. State*, 482 So. 2d 241 (Miss. 1986), this Court granted his application for leave to proceed in the trial court on the issue of ineffective assistance of counsel.

Following the evidentiary hearing, the trial court concluded that Tokman received constitutionally effective assistance of counsel during the guilt phase of his trial but not during the sentencing phase. Thus, his petition was granted in part. Both the State and Tokman appealed the lower court's decision, and this Court affirmed and remanded for a new sentencing hearing. *State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

While awaiting the sentencing hearing, Tokman was moved to the Hinds County Detention Center so that he could have sufficient opportunity to consult with counsel. On May 21, 1991, he attempted to escape from the facility. As a result, he was indicted for attempted jail escape, a felony. He initially pled not guilty, but later he changed his plea to guilty pursuant to a plea bargain agreement and was sentenced to one year imprisonment for attempted escape.

Also under the agreement, Tokman pled guilty to a charge of kidnapping, which occurred during the slaying of the cab driver. He waived an indictment on the kidnapping charge and the statute of limitation bar. In exchange for this plea, Tokman was sentenced to life for the capital murder of Albert Taylor and a consecutive sentence of thirty years for the kidnapping charge.

After the agreement, Tokman filed a petition for post-conviction relief which was summarily denied by the trial court. Aggrieved, he appealed to this Court for relief.

## II.

At the outset, Tokman argues that his right to be free from double jeopardy was violated when the trial court allowed him to plead guilty to kidnapping after he had previously been found guilty of capital murder. In short, Tokman asserts that he pled guilty to kidnapping the same victim whom he was charged and convicted of robbing and killing. He further argues that under the capital murder statute all of the underlying felonies merge with the offense of capital murder, thereby prohibiting him from being convicted of both capital murder and one of the underlying felonies. *See **Miss. Code Ann. § 97-3-19 (1994)***.

The State counters that the underlying felony which elevated the murder in this case to capital murder was robbery, not kidnapping. The State's argument is well taken.

In ***Fuselier v. State***, 654 So. 2d 519 (Miss. 1995), the defendant was charged with capital murder. Burglary was the underlying offense. Pursuant to a plea bargain agreement, the defendant pled guilty to both capital murder and a separate count of burglary. We vacated the convictions and plea bargain as violative of double jeopardy because burglary was used as the underlying offense for capital murder and as a separate crime.

Here, an entirely different situation is presented. Tokman was charged with capital murder committed during the felony offense of robbery. Pursuant to a plea bargain agreement, he was later charged with and pled guilty to a distinct and separate felony offense, i.e., kidnapping. There is an obvious distinction between these facts and ***Fuselier***.

The instant matter is more analogous to ***Woodward v. State***, 533 So. 2d 418, 422-23 (Miss. 1988), *vacated in part on other grounds*, 635 So. 2d 805 (Miss. 1993). There, the defendant was charged in a single indictment with capital murder, kidnapping, and sexual battery. Following convictions on all three counts and a sentence of death, the defendant appealed, arguing that he "should have been charged in a single count of only capital murder because the provisions of the statute merged the crimes of kidnapping, sexual battery and rape into capital murder if murder was committed while the person was engaged in the commission of those underlying crimes." ***Id.*** at 422. There, we recapitulated the question as whether a defendant "may be convicted of both felony murder and another felony or felonies which were not used as a basis for the felony murder charge in a multi-count indictment arising out of the same transaction or occurrence." ***Id.*** Relying upon ***Blockburger v. United States***, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), this Court answered that question affirmatively, concluding that "a criminal defendant may be prosecuted for more than one statutory offense arising out of a basic set of facts." ***Id.***; ***Harden v. State***, 460 So. 2d 1194, 1199 (Miss. 1984).

Applying this principle to the facts presented in *Woodward*, we determined that kidnapping and sexual battery were different offenses from capital murder committed during a rape because each offense required proof of at least one element the other did not. Moreover, we noted that the kidnapping and sexual battery charges did not merge into the capital murder - rape offense because they stemmed from acts separate and distinct from the act which produced the victim's death.

Here, Tokman initially was charged with and convicted of capital murder - robbery. Miss. Code Ann. § 97-3-73 (1972) (robbery) provides that:

> Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.

Miss. Code Ann. § 97-3-51 (1972) sets out the elements of kidnapping:

> Every person who shall, without lawful authority, forcibly seize and confine any other, or shall inveigle or kidnap any other with intent to cause such person to be secretly confined . . . or to cause such other person to be deprived of his liberty, or in any way held to service against his will . . .

Under the kidnapping statute, the State must prove that a person forcibly seized and confined someone or that he inveigled or kidnapped the person. To convict Tokman of capital murder, with robbery as the underlying offense, the State did not have to prove that he forcibly seized and confined or kidnapped the cab driver. Similarly, it was not necessary to prove that personal property was taken from the cab driver to sustain the kidnapping charge. Thus, the two offenses, i.e., robbery and kidnapping, are clearly separate and distinct, each requiring proof of facts the other did not. As such, Tokman's convictions for capital murder committed during a robbery and his subsequent plea of guilty to kidnapping did not violate the protections afforded under the Double Jeopardy Clause.

### III.

Tokman next argues that the plea bargain agreement was the result of an unknowing, involuntary, and unintelligent waiver of his fundamental rights. In particular, he argues that the State "overstepped" its statutory authority by inventing another felony, i.e., kidnapping, eleven years after the fact to ensure that he received as much prison time as possible. In short, Tokman appears to be dissatisfied with the terms of the plea agreement and now asserts that he was bulldozed into accepting the agreement.

He asks us to consider and accept as true non-record evidence. Specifically, he asserts that during the colloquy with the trial court regarding his decision to plead guilty, he hesitated when the trial judge informed him that he would have to serve at least ten years of the thirty-year kidnapping sentence before becoming eligible for parole. His hesitation was purportedly quashed by his attorney who allegedly "winked" at him in a way which suggested that he "just go ahead and accept Judge Coleman's explanation of the law; everything will be all right."

It is well settled that a guilty plea "is not binding upon a criminal defendant unless it is entered voluntarily and intelligently." *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992) (*citing Myers*

*v. State*, 583 So. 2d 174, 177 (Miss. 1991)). A guilty plea is "voluntary and intelligent" if the defendant is advised of the nature of the charge against him and the consequences of the plea. *Alexander*, 605 So. 2d at 1172 (*citing* **Wilson v. State**, 577 So. 2d 394, 396-97 (Miss. 1991)). Among the many rights the defendant must be informed of, Rule 8.04 of the Uniform Circuit and County Court Rules requires the trial judge to "inquire and determine" if the defendant understands, among other things, the maximum and minimum penalties to which he may be sentenced. *Alexander*, 605 So. 2d at 1172 (Referring to Rule 3.03 of the Uniform Criminal Rules of Circuit Court Practice which is now covered by Rule 8.04). A valid guilty plea operates as a waiver of all nonjurisdictional rights or defects that are incident to trial. **Anderson v. State**, 577 So. 2d 390, 391 (Miss. 1991) (*citing* **Ellzey v. State**, 196 So. 2d 889, 892 (Miss. 1967)).

One of the factors this Court considers in determining the validity of a guilty plea is the colloquy between the trial court and the defendant before the acceptance of the guilty plea. *See* **Roland v. State**, 666 So. 2d 747, 750 (Miss. 1995) (concluding that the court's thorough questions to the defendant at the hearing showed that the plea was voluntary); *see also* **Gardner v. State**, 531 So. 2d 805, 809 (Miss. 1988) (*citing* **Sanders v. State**, 440 So. 2d 278, 288 (Miss. 1983)) in which this Court stated that "the thoroughness with which [a defendant is] interrogated by the lower court at the time his plea [is] tendered is the most significant evidence of all [on the issue of the validity of a guilty plea]"). Additionally, we have held that "[s]olemn declarations in open court [by a defendant] carry a strong presumption of verity." **Baker v. State**, 358 So. 2d 401, 403 (Miss. 1978) (*quoting* **Blackledge v. Allison**, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1976)).

In the present case, the colloquy between the trial judge and Tokman was more than thorough. The trial court explained to Tokman that he was there on three separate charges -- capital murder (resentencing), kidnapping, and attempted jail escape. Also, the trial court judge informed Tokman of all of his rights and asked him throughout the discussion whether he understood and desired further explanation. Regarding the kidnapping charge, the trial court expressly explained to Tokman that the State would not be able to charge him with kidnapping without the plea bargain agreement as the statute of limitation had passed. In reply to the question whether anyone had made any threats or promises to him or had applied any type of force or mental pressure to get him to enter the agreement, Tokman responded negatively. For each offense, the trial court set out the elements, in addition to asking Tokman if his attorneys had rendered satisfactory services. Furthermore, the trial judge informed Tokman of the minimum and maximum sentences for kidnapping and attempted escape, as well as details about when he would be eligible for parole.

Following the colloquy, Tokman made the following statement:

> . . . I would like to say I'm glad this is over with. Now I want -- I want to apologize to Mrs. Robinson for what happened eleven years ago. And I have a conscience. I haven't lost my memory. I know what I did. And if I could have traded my life for Albert Taylor's life anytime over the past eleven years, I would have done it; it would have been worth it. And I am glad the DA's office let me make this deal to save my life. I am glad my attorneys fought like hell in the courts because I know half the guys on death row don't have any legal representation worthwhile. And I never meant the things I did. I really -- I'm sorry. I'm sorry.

This Court concludes, based upon a careful review of the record evidence, that the colloquy between

Tokman and the trial court disproves Tokman's assertions that he entered the plea bargain agreement involuntarily, unknowingly, and unintelligently. The record indicates that the court informed Tokman of the nature of the charges against him, the consequences of a guilty plea, including the forfeiture of the rights and defects incident to trial, and the minimum and maximum punishment he faced. Additionally, the above-cited quote establishes that Tokman admitted that he did, in fact, commit the crimes as alleged.

## IV.

Tokman further asserts that it was improper for the State to charge him with kidnapping eleven years after the commission of the crime. Typically, Tokman would be correct; however, the present situation is atypical. Here, Tokman did not want to be subjected to the possibility of receiving the death penalty again at the new sentencing hearing. He decided to waive the statute of limitation violation to avoid that possibility.

It is not improper for an accused to forfeit a colorable claim or violation to receive a more advantageous or lenient sentence. *See Conerly v. State*, 607 So. 2d 1153 (Miss. 1992) (establishing that the statute of limitation is a nonjurisdictional affirmative defense that may be waived via a voluntary plea of guilty, resulting in the forfeiture of the right to raise the matter in a subsequent proceeding).

The instant assignment of error is without merit under the rationale of *Conerly* because the record evidence shows that Tokman's guilty plea was voluntary.

## V.

According to Tokman, the trial court failed to follow Rule 3.03[1] which requires that, before accepting a guilty plea, the court determine whether there is a factual basis for the plea of guilty to an offense. Specifically, Tokman argues that the trial court never attempted to elicit the factual basis of the kidnapping charge, but instead relied upon personal knowledge, i.e., information provided by co-defendant Fuson in the previous trial.

The colloquy between Tokman and the trial court demonstrate that the "critical elements" of kidnapping were provided to Tokman and that he responded that he understood with what he was being charged. Based upon the facts set out in this Court's previous two opinions involving Tokman, there was clearly a factual basis for the kidnapping charge. At the initial trial, co-defendant Fuson testified that a rope was placed around the cab driver's neck and that he was pulled into the back seat. Tokman admitted that he got into the driver's seat and drove the cab to the scene of the murder. It cannot be disputed that the three cohorts confined the cab driver against his will under these facts, and it is apparent that Tokman played an integral role in accomplishing that confinement.

Nevertheless, this Court finds that the trial court did, in fact, improperly rely upon his personal recollection of the facts from a previous trial to determine whether there was a factual basis for the kidnapping charge.[2] Such error was harmless, however, because there was ample testimony from Tokman which provided an independent factual basis for the kidnapping charge. Tokman told the trial court that he had gone over his petition to plead guilty to kidnapping and that everything asserted in the petition was true and correct. The petition included the facts and elements of the

kidnapping in this case and was signed by Tokman. Besides the petition to plead guilty, Tokman admitted that he assisted in the confining and murdering of the cab driver by, at a minimum, driving the car to the scene of the slaying while his co-defendant forcibly held the cab driver in the backseat.

Hence, this Court concludes -- in light of Tokman's testimony regarding the kidnapping -- that the trial court' reliance on his personal knowledge in finding a factual basis for kidnapping constituted error that was harmless beyond a reasonable doubt.

## VI.

According to Tokman, his attorneys and the State's prosecutors threatened that unless he agreed to accept the plea bargain, he would very likely receive a second death sentence. He posits, "Under such extraordinary circumstances, how can any plea, with the shadow of the death penalty, not be threatening and coercive in nature?"

This assignment of error lacks merit because the record is devoid of any proof whatsoever that Tokman was threatened or coerced in any way. Telling Tokman that he would face the death penalty if he rejected the plea offer was neither impermissible nor coercive. It was simply a statement of fact.

## VII.

Tokman next asserts that he received ineffective assistance of counsel in that his attorneys bulldozed him into entering the plea bargain agreement and failed to advise him to go to trial instead of pleading guilty.

To be successful on an ineffective assistance of counsel claim, the defendant must meet a two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984) and adopted by this Court in *Knight v. State*, 577 So. 2d 392, 394 (Miss. 1991). The *Strickland* test requires a showing of (1) deficiency of counsel's performance that is (2) sufficient to constitute prejudice to the defense. *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990). The totality of the circumstances shall be considered when determining whether counsel's performance was both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988).

Here, Tokman had previously been found guilty of capital murder. The only issue before the trial court was a new sentencing hearing. At the new hearing, Tokman would have been faced with the possibility of death again. The record indicates that Tokman personally thanked the State for allowing him to enter the plea bargain agreement in lieu of being faced with death. He now argues that he was bulldozed into the agreement. Such an argument is precarious at most.

There is no proof that Tokman's attorneys provided him with deficient representation. To the contrary, Tokman bragged about the quality of his legal team; moreover, when asked if his attorneys coerced him in any way, Tokman answered negatively. Likewise, when asked if his attorneys had provided him with information that conflicted with what the trial court told him, Tokman again answered negatively.

Like there is no proof whatsoever of deficient assistance, there is no proof of prejudice or harm stemming from Tokman's legal representation considering the fact that Tokman could have been facing death instead of parole eligibility after twenty years' imprisonment.

## VIII.

Tokman takes issue with the fact that he forfeited his right to lodge the statute of limitation violation argument against the kidnapping charge, to which he pled guilty under the terms of the agreement.

The record shows that the trial court explicitly informed Tokman that, if he refused to waive the statute of limitation violation, the State could not pursue the kidnaping charge in light of the time bar. Armed with this information, Tokman decided to forfeit his right to apply the bar.

In *Conerly*, this Court concluded that a statute of limitation violation was nonjurisdictional and waivable in the face of a voluntary guilty plea. *Conerly*, 607 So. 2d at 1158. In the present matter, Tokman forfeited the right to raise the statute of limitation violation. His guilty plea and waiver were voluntary, intelligent, and knowing. Thus, this point of error lacks merit.

## IX.

Lastly, Tokman avers that all of the preceding assignments of error, taken together, show that he was deprived of a fair and impartial criminal proceeding. It is elementary that there can be no cumulative error where there were no error with which to begin.

## X.

Because the record and arguments brought forth by Tokman fail to disclose error, we affirm the lower court's judgment *in toto*.

**DENIAL OF POST CONVICTION RELIEF AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. Rule 3.03 is now covered by Rule 8.04 of the Uniform Rules of Circuit and County Court Practice.

2. During the colloquy, the judge stated, "Maybe I should state for the record that I have heard the testimony involved in this case at least five times, on trial, retrials, and motions for post conviction relief, and I deliberately did not go into an attempt to elicit the factual basis of the plea because I, as I said, from the previous testimony I've heard in which the defendant was represented by able counsel at the post-conviction relief that there is a basis in fact for proof of the elements of kidnapping, and for that reason, that's the reason why I accept the guilty plea. . . ."