¶ 1. The Copiah County grand jury indicted Keith R. Bryant for the crime of armed robbery in November 1999. During Bryant's first trial on March 15, 2000, he subpoenaed Paul Wilkerson of the state crime lab; Wilkerson testified and the trial ended with a hung jury. The court granted a mistrial and scheduled the second trial for the April 2000 term of court.
¶ 2. The State requested an agreed order of continuance that the court granted due in large part to a congested docket. A jury heard the case against Bryant on July 17, 2000, and convicted him. The court sentenced Bryant to ten years in prison. On the morning of the trial, the court denied Bryant's motion for a continuance to secure Wilkerson's presence for testimony. Wilkerson was unavailable because he was testifying in South Carolina that day.
¶ 3. Bryant moved for a judgment notwithstanding the verdict following his conviction; the court denied the motion on July 20, 2000, and entered final judgment on August 9, 2000. Bryant timely filed his notice of appeal on August 31, 2000.
 STATEMENT OF ISSUES I. DID THE COURT ERR IN DENYING BRYANT A CONTINUANCE TO SECURE THE PRESENCE OF WILKERSON, A KEY DEFENSE WITNESS?
 II. DID THE COURT ERR BY DENYING A JNOV FOR THE DEFENSE DUE TO WILKERSON'S ABSENCE?
 FACTS
¶ 4. Keith Bryant was arrested for robbing the Ramada Inn of Hazlehurst on November 10, 1999. At his first trial in March 2000, Sandra Marsaw, the witness to the robbery, testified that she spoke with Bryant on November 10, and that later that day he returned to rob the Ramada Inn where she worked. She identified Bryant by the clothes he had on because he wore a stocking over his face during the robbery. *Page 36 
¶ 5. The arresting officer, Detective Milton Twiner, arrested Bryant at the house of Derrick May, where the officer also found a black bag belonging to Fred Bogan that contained some of Bogan's clothes and Bogan's gun, which was identified by Marsaw as the weapon used in the robbery. Twiner sent the gun to the Mississippi Crime Lab along with a fingerprint card with Bryant's prints for identification purposes.
¶ 6. Bryant called Paul Wilkerson of the Mississippi Crime Lab to testify. Wilkerson testified that he found no prints matching Bryant's on the gun. He found no evidence that the gun had been wiped clean, and that Bryant's prints were not on the magazine of the gun. The defense felt this was crucial to their case, as Wilkerson intimated that Bryant had likely not loaded the gun, much less used it.
¶ 7. Bryant next called Officer Frank Braxton, one of the investigating officers, who testified that besides Marsaw's statement there was no evidence at the scene linking Bryant with the crime. Finally, Bryant called Derrick May, who testified that he spent the entire day with Bryant except for the short time when Bryant originally spoke with Marsaw, and that the bag found at his residence did not belong to Bryant. The jury did not reach a verdict and the judge ruled it a mistrial.
¶ 8. The court scheduled the second trial for the April term, and Bryant issued a subpoena for Wilkerson in advance of the trial, but the court granted the State a continuance based on an overcrowded court docket. The trial was set for July 17, 2000. Bryant filed a second request for a subpoena for Wilkerson on July 6, and another request on July 10. On July 10, Attorney Barnett's office telephoned the court clerk and confirmed that the subpoenas were sent out. Barnett's office received no confirmation of service prior to trial.
¶ 9. On the morning of the trial, Barnett's office telephoned Wilkerson's office to remind him that he was due to testify, but was only able to leave a voice mail message. The defense was unconcerned, because they had contacted Wilkerson in this fashion for the first trial. After voir dire was complete and the jury was selected, the defense announced ready for trial, and Barnett's clerk again tried to contact Wilkerson. At this time, he learned that Wilkerson was in South Carolina testifying, and unable to testify at the trial in Mississippi. The defense immediately moved for a continuance on this basis, which the court denied. The State offered to stipulate to the contents of Wilkerson's report, and the court asked for a transcript of his earlier testimony. Attorney Barnett confessed that he had no transcript, and refused to stipulate to Wilkerson's report.
¶ 10. The jury convicted Bryant, and the court sentenced him to ten years in prison for armed robbery. At the motion hearings for the continuance, the court learned that no return of service for Wilkerson had been issued before trial to the defense; later, a return had been filed indicating Wilkerson had not been located. The first attempt at service was made on July 17, the morning of the trial.
¶ 11. Bryant filed a motion for JNOV or in the alternative a new trial; hearing was set for August 18. The defense provided the court with details of its attempt to reach Wilkerson, and an affidavit from Wilkerson regarding his testimony and why he was unavailable for testimony on July 17. The court denied the motions, and Bryant appealed.
 ANALYSIS I. DID THE COURT ERR IN DENYING BRYANT A CONTINUANCE *Page 37 TO SECURE THE PRESENCE OF WILKERSON, A KEY DEFENSE WITNESS?
¶ 12. Motions for continuances are granted or denied on the court's discretion. Miss. Code Ann. § 99-15-29 (Rev. 2000). This is the highest burden for an appellant to overcome; consequently, "[a] denial of the continuance shall not be grounds for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." Id. The defendant must show by affidavit: first, the name and residence of the absent witness; second, that he used due diligence to procure the witness's presence; third, that the continuance is not sought for delay, but that justice may be done. Id.
¶ 13. Bryant's appeal shares many features with Wilson v. State,716 So.2d 1096, 1097-99 (¶ 8-18) (Miss. 1998), where Wilson's friends were to testify in his defense, but Wilson declined to issue subpoenas, assuring his attorney that his friends would attend the trial. Wilson's friends constituted the whole of his defense, and their absence effectively robbed him of evidence. Id.
 As witnesses important to the defendant's case, these individuals should have been contacted well before trial . . . Wilson's attorney, having discovered that they would likely not be present at trial, then relied completely on the State to procure these witnesses. Wilson, as the criminal defendant, had the first responsibility and was in the best position to ensure that his attorney was made aware of these witnesses and aware of potential difficulties in obtaining them.
Id.
¶ 14. Bryant did in fact issue subpoenas ten days in advance of the postponed date of the second trial, and again four days later. Yet he never attempted to contact Wilkerson until the morning of the trial. Nor did he seek return of service from the clerk of the court. Bryant could have requested that the court order all called witnesses to appear at the rescheduled date; also, Bryant could have had process servers deliver the subpoenas to Wilkerson, rather than rely on law enforcement officers. Finally, Bryant did not preserve Wilkerson's evidence on the record either through previous testimony, or through stipulation. Although it cannot be viewed as entirely the defense's fault for failing to find Wilkerson, as there was no return of service, the burden of the defense providing its own witnesses is still preeminent, unless of course the witness is in State custody.
¶ 15. Bryant refers this Court to Childs v. State, 146 Miss. 794,112 So. 23 (1927). Childs was accused of murder and convicted after the court refused to grant a continuance to locate two witnesses that would testify to the elements of self defense. Childs, 146 Miss. at 797, 112 So. at 23.
 It will be observed that this was very important and vital testimony for the defendant, and the mere reading to the jury from the application, and the admission that this witness, if present, would have so testified, would not cure the error of the court in trying the case, in the absence of this witness, if the testimony was not cumulative as is contended here by the Attorney General's office . . .
 It is our opinion, moreover, that the testimony of the witness Crum, who was a disinterested person, could not be considered cumulative under the circumstances, for we think that, instead of Crum's testimony being cumulative, it would have been strictly corroborative of the testimony of appellant and his infant son. *Page 38 
 But whether we say it was corroborative, or additional proof of the fact sworn to by the appellant and his son, and in this sense was cumulative, can make no difference, as we see it, because, in no view, do we think the testimony of Crum would have been useless or unnecessary as being cumulative; it was valuable testimony. Therefore the court erred in putting the appellant to trial without the witness Crum.
Id. at 798.
¶ 16. Wilkerson can be distinguished from Crum in his character as a witness. Wilkerson was not going to testify to any elements of either the crime or a defense; rather, he was to testify that no physical evidence linked the gun to Bryant. This was amply demonstrated in his report. Second, although his testimony was not cumulative, it nevertheless would be limited to his report and little else of interest. The mere lack of fingerprints on a gun used in a robbery, even the nature of their absence, is not dispositive that Bryant was not involved in the robbery.
 The rule requiring the production of documents and witnesses is for the securing of justice, and the party relying upon testimony which is not before the court on the trial must show that he has exercised due diligence in his efforts to secure it, and if he cannot do so, he must offer a reasonable excuse for his failure to do so, together with affidavits and documents to show what such testimony would have been had the witnesses been before the court.
Ogden v. State, 174 Miss. 119, 125, 164 So. 6, 8 (1935).
¶ 17. We find that the court did not abuse its discretion in denying Bryant a continuance to secure the testimony of Paul Wilkerson, and affirm the court's ruling.
 II. DID THE COURT ERR BY DENYING A JNOV FOR THE DEFENSE DUE TO WILKERSON'S ABSENCE?
¶ 18. It is well settled that evidence not properly before the court cannot be considered grounds for a JNOV. "[I]t is an appellant's duty to justify his arguments of error with a proper record, which does not include mere assertions in his brief, or the trial court will be considered correct." American Fire Protection, Inc. v. Lewis,653 So.2d 1387, 1390 (Miss. 1997). A motion for JNOV is also considered in the light most favorable to the non-moving party. "[The evidence is considered] in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence." Id. Beyond the fact that Bryant presented no witnesses in the retrial and that the witnesses for the State are uncontroverted, it is impossible to see how a JNOV could be granted for the defense, as the State's evidence must be treated as true for purposes of the motion.
¶ 19. The importance of Wilkerson as a testifying witness is not at issue; Bryant would have been well served by procuring a transcript of the mistrial, and there was certainly ample time to do so. Bryant's attorney could have taken this precaution.
 CONCLUSION
¶ 20. Bryant's two grounds for appeal suffer from the same defect: there is no demonstrable prejudice to his case from the evidence before the court. Bryant should have had a transcript available from the earlier mistrial; at the very least, he should have known if his witness was going to appear. The mere fact of issuing subpoenas is not sufficient for due diligence; in each case concerning key, unavailable witnesses, the circumstances of *Page 39 
unavailability are great where prejudice has been found, and their testimony unique.
¶ 21. Bryant's appeal of the denied JNOV also lacks merit. No court may consider evidence not properly before it; since Bryant refused to stipulate to Wilkerson's report, that testimony did not come before the court and could not be considered in the JNOV. Since the evidence must be considered in the most favorable light to the State, as the non-moving party, there is no evidence which mandates reversal.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF THECONVICTION OF ARMED ROBBERY AND SENTENCE OF 10 YEARS IN THE CUSTODY OFTHE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THISAPPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., THOMAS, LEE, IRVING,MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.