KING, C.J.,
for the Court.
¶ 1. Larry Harris was convicted in the Circuit Court of Hinds County, Mississippi of possession of cocaine. As a second time offender, he was sentenced to a term of twelve years in the custody of the Mississippi Department of Corrections, with four years of supervised probation. Aggrieved by his conviction and sentence, Harris raises the following issues, which we quote verbatim:
I.The trial [cjourt erred when it allowed the case to go to the jury, as the prosecution should have been collaterally estopped from pursuing charges against Mr. Harris. Prosecutors had in hand a guilty plea from William Pugh, who confessed to possession of the very same cocaine the [Sjtate alleged Mr. Harris possessed, thus depriving Mr. Harris of his fundamental right to due process of law and a fair and impartial trial[.j
II. The trial [cjourt erred when it refused to admit into evidence the sentencing order of William Pugh, who possessed the cocaine in dispute, so that the jury lacked all relevant and probative facts surrounding the arrest of Mr. Harris[.j
III. The trial [cjourt erred when it refused a continuance or a mistrial due to the unavailability of [Sjtate witnesses Ben Bratton and Richard McGahey, both of whom would have offered evidence exculpatory to Mr. Harris. This error deprived Mr. Harris of his fundamental right to compel the attendance of witnesses in his behalf, a fair and impartial trial and due process of law, all secured to him under both federal and state constitutions[.j
IV. The trial [cjourt erred when it refused jury instruction D-7; the evidence was clearly insufficient because the testimony of Officer Robert Shegog lacked all indicia of credibility, as evidenced by the report he filed of the April 3, 2001 raid.
FACTS
¶ 2. On the afternoon of April 3, 2001, Harris went to 821 Powell Rhodes Street in Jackson. According to Harris, he went to visit the owner of the residence. Officers with the Jackson Police Department (narcotics division) conducted a narcotics raid on this residence at that time. Seven officers entered the house to execute a search warrant.
¶ 3. Officer Robert Shegog of the Jackson Police Department testified that he was the last officer to enter the house. Upon entering the house, Officer Shegog “keyed on a black male subject that was sitting beside a black chair to the right-hand side of the door as you go in. He was wearing green pants and a white tee shirt.” There were several individuals at *369 this house. According to Officer Shegog, he asked all of the individuals to raise their hands, but one male, later identified as Larry Harris, refused to do so.
¶ 4. As Shegog began to approach Harris, he noticed that Harris had something inside of his left hand, which he threw on the floor beside the left side of a chair. Shegog then detained Harris, put him in handcuffs, and advised Officer Harding (case agent in charge of the narcotics raid) of the substance Harris threw on the floor. Harding retrieved the substance and placed it in a clear plastic evidence bag. The substance was later taken to the crime lab, where it was determined to contain cocaine. According to Patricia Barnes of the Jackson Police Department crime lab, the weight of the substance was 1.08 grams.
¶ 5. Officer Harding stated that Shegog informed him that he saw Harris throw a “plastic bag with cocaine behind a chair, which he was seated in.” Harding assisted Shegog in detaining Harris. Harding picked up the bag of substance and advised Harris that he was under arrest and advised him of his Miranda rights. Harding also indicated that he “did not see any drugs” on Harris.
¶ 6. Harris testified that an individual named William Pugh was sitting in the chair where the cocaine was located. According to Harris, he was under the impression that he and another individual were not going to jail because they had been separated from the other individuals at the house and were told that they were not going to jail. Harris indicated that Officer Preston Carter “ran a check on everybody.” The call indicated that someone named Larry C. Harris was wanted on a felony shoplifting charge. Harris was then advised that he had to go downtown to straighten out the matter. Harris stated that his name was not Larry C. Harris but Larry D. Harris and asked one of the officers to contact his sister, a former Jackson police officer to verify the name. Harris further stated that he did not have cocaine in his possession on April 3, 2001, nor did he place the substance on the floor beside the chair.
¶ 7. Harris was convicted of possession of cocaine and sentenced to a term of twelve years in the custody of the Mississippi Department of Corrections, with four years of supervised probation. Harris filed posttrial motions, which were denied.
ISSUES AND ANALYSIS
I.
Whether the State should have been collaterally estopped from prosecuting Harris on the charge of possession of cocaine.
¶ 8. Harris argues that the criminal proceedings against him should have been barred by the doctrine of collateral estop-pel because another individual entered a guilty plea regarding possession of the same cocaine Harris was charged with possessing.
¶ 9. “Collateral estoppel provides that an issue of ultimate fact which was a valid and final judgment may not be re-litigated between the same parties in a subsequent suit.” Farris v. State, 764 So.2d 411 (¶ 37) (Miss.2000) (citing Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).
¶ 10. Harris alleges that the “ultimate fact” was decided when another individual was indicted and subsequently pled guilty to possession of the same cocaine Harris was charged with possessing. Harris relies on Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) where approximately four armed men robbed six poker players in the home of one of the *370 victims and the defendant was charged with separate counts of robbery of each of the victims. The defendant was tried on one count and was acquitted for insufficient evidence where the defendant’s identity was the single issue in dispute. The federal rule of collateral estoppel, along with the Fifth Amendment right against double jeopardy, precluded a subsequent prosecution of the defendant for the robbery of a different player. In that case, the court stated that “when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Id. at 443, 90 S.Ct. 1189.
¶ 11. In its response, the State cites State v. Oliver, 856 So.2d 328 (Miss.2003), where the supreme court held that the “doctrine of collateral estoppel did not preclude State from charging defendant with offense that was basis for unsuccessful petition to revoke probation.”
¶ 12. In Oliver, the court stated the following:
In Sanders, this Court adopted the collateral estoppel analysis of Ashe only because “it has become so firmly embedded in federal criminal constitutional procedural jurisprudence — -illogical though it is.” Id.
Because collateral estoppel does not work in [all] criminal cases, “[W]e would prefer to cast the Court’s decision here in pure double jeopardy terms, never mentioning collateral estoppel.” Sanders v. State, 429 So.2d 245, 251 (Miss.1983). Whether framed in terms of “collateral estoppel” — that the issue of fact has been previously decided unfavorably to the [Sjtate — or in terms of “double jeopardy” — successive prosecutions for the same criminal conduct — the analysis is identical.
Id. at (¶ 7).
¶ 13. In this case, the record shows that there was an eyewitness, Officer Shegog who testified that he saw Harris with the substance. The record does not reflect that another individual was actually charged with possession of the cocaine at issue, as alleged by Harris, nor does case law indicate that more than one individual may not be charged with the same criminal conduct. Tillman v. State, 841 So.2d 1160 (¶ 8) (Miss.Ct.App.2002). Therefore, this Court affirms the trial court’s decision.
II
Whether the trial court erred in denying the admissibility of certain evidence.
¶ 14. Harris asserts that the trial court erred when it refused to admit the sentencing order of William Pugh as evidence. Harris maintains that the jury “lacked all relevant and probative facts surrounding the arrest.” Harris cites Mississippi Rule of Evidence 401, which provides that “ ‘Relevant Evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
¶ 15. The State indicated that the sentencing order of Pugh had no relevance to Harris’ trial. The trial court agreed with the State and denied the admission of the order.
¶ 16. “The admissibility and relevancy of the evidence are within the discretion of the trial court and, absent an abuse of that discretion, the trial court’s decision will not be disturbed on appeal.” McCoy v. State, 820 So.2d 25 (¶ 15) (Miss.Ct.App.2002). When the trial court re *371 mains within the confínes of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference. Id. Furthermore, “the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account.” Id.
¶ 17. While evidence may be found relevant, the court must also determine that it is more probative than prejudicial. Moore v. State, 806 So.2d 308 (¶ 11) (Miss.Ct.App.2001).
¶ 18. Harris cites Terry v. State, 718 So.2d 1115 (¶ 28) (Miss.1998) which states, “A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant’s defense where there is testimony to support the theory.” Harris contends that he testified that it was Pugh who was sitting in the chair where the cocaine was located.
¶ 19. However, other than Harris’ testimony, the record does not reflect that evidence was provided which indicated that someone else, other than Harris, was in possession of the cocaine at issue. The State presented an eyewitness (Officer Shegog) who testified that he saw Harris possess the cocaine. Therefore, this Court cannot say that the trial court was in error by denying the admission of Pugh’s sentencing order into evidence.
III.
Whether the trial court erred in denying the motion for continuance.
¶ 20. Harris contends that the trial court erred in denying his motion for a continuance of “at least a week and a half to allow for the return of a subpoenaed witness, a Ben Bratton, from out of state.”
¶ 21. “The decision to grant or deny a continuance is left to the sound discretion of the trial court.” Buckley v. State, 772 So.2d 1059 (¶¶ 2-5) (Miss.2000) (see Bryant v. State, 843 So.2d 34 (¶ 12) (Miss.Ct.App.2002)). “Unless manifest injustice appears to have resulted from the denial of the continuance, this Court should not reverse.” Lambert v. State, 654 So.2d 17, 22 (Miss.1995).
¶22. In this case, Harris’ attorney made a motion for a continuance based on a newly discovered witness. The attorney indicated that this newly discovered witness (Ben Bratton) was in the room at the time of the incident and could provide evidence towards Harris’ innocence. However, the potential witness was unavailable at the time of the trial. The trial court overruled the motion.
¶23. Harris also maintains that the trial court’s error was compounded when the court refused to call a mistrial or allow a continuance to permit the testimony of another officer (who was not subpoenaed and who was also unavailable) who could have stated whether the cocaine came from Harris or another individual. This Court notes that the trial court allowed Harris’ attorney to state by proffer the information that the unavailable officer would have been able to provide as being relevant to the case. Upon hearing the response, the trial court indicated that because Harris’ attorney did not show how the potential information could have been relevant to Harris’ trial, the continuance was denied.
¶ 24. Having reviewed the record, this Court affirms the trial court’s decision.
IV.
Whether the trial court erred by denying jury instruction D-7.
¶ 25. Harris states that the trial court should have allowed instruction D-7 *372 which states, “The Court instructs the jury to find Larry Harris not guilty of possession of cocaine.” Harris claims that the evidence presented was insufficient. He maintains that the only testimony which linked him to the possession of cocaine was the testimony of Officer Robert Shegog. He argues that Shegog failed to tell the truth because the testimony given by She-gog did not coincide with the information in Shegog’s written police report.
¶26. The weight and credibility given the testimony of a witness is for the jury to resolve. McClain v. State, 625 So.2d 774, 778 (Miss.1993). This Court adheres to the following standard in reviewing sufficiency of evidence matters:
The credible evidence consistent with McClain’s guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. at 778 (citations omitted).
¶ 27. In this instance, the jury chose to believe the State’s witnesses. Upon reviewing the record, this Court finds that there was sufficient evidence for the jury to find Harris guilty. The issue is without merit.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOUR YEARS OF SUPERVISED PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.